Alton F. **HANSON** and **Lydia Hanson, Plaintiffs,**

v.

**LIBERTY HOMES, INC., Defendant.**

**Civ. No. 4–80–499.**

United States District Court, D. Minnesota, Fourth Division.

April 2, 1981.

Marc G. Kurzman, Kurzman, Shapiro & Manahan, Minneapolis, Minn., for plaintiffs.

Stephen H. Cohen, Gary J. Haugen, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for defendant.

Warren R. Spannaus, Atty. Gen., and Karen G. Schanfield, Sp. Asst. Atty. Gen., St. Paul, Minn., for amicus curiae State of Minnesota.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiffs' motion for partial summary judgment and defendant's motion for summary judgment. The parties have presented to the Court numerous issues of constitutional law and statutory construction. The Court has concluded that one issue of statutory construction raised by the defendant requires dismissal of this lawsuit.

### FACTS

On July 2, 1979, plaintiffs Alton and Lydia Hanson purchased a mobile home manufactured by defendant Liberty Homes. In November of 1979, the plaintiffs complained to the defendant that they were experiencing the symptoms of formaldehyde irritation. Liberty Homes sent a service representative to the home to attempt to repair the problem. In January, 1980, the plaintiffs asked the Minnesota Department of Health to test the ambient air level of formaldehyde vapor in their mobile home. The tests showed a formaldehyde level of 0.68 ppm in the living room and 0.79 ppm in the bedroom. Based on this information and on the description of symptoms by the plaintiffs, Dr. Donald Duncan of the St. Louis Park Medical Center recommended to the plaintiffs that they move out of the mobile home. In late January or early February of 1980, the plaintiffs vacated the home. On February 21, they sent a notice of revocation of acceptance to the financing institution, and this ultimately reached the defendant.

On April 23, 1980, the following statute was enacted into law:

The manufacturer of a product or builder of a housing unit that contains materials made with urea formaldehyde shall pay the reasonable cost of repair or relocation if the consumer can document that the housing unit contains a significant ambient air level of formaldehyde and in addition has documented medical records of illness related to formaldehyde and a statement from a physician that the consumer must vacate the premises. The party who has received the claim has the right to test the ambient air level of the housing unit at reasonable times.

If within 30 days after the presentation of the items set forth above the manufacturer or builder and the consumer do not agree on a remedy the consumer may bring suit to recover the reasonable cost of repair or relocation plus reasonable attorneys' fees. Notwithstanding the remedy under this subdivision, the consumer may bring an action for personal injury, if any, if the action is commenced within one year from the presentation of the items required by this subdivision.

Minn.Stat. § 325F.18, subd. 4 (1980).[1] This statute became effective on the day following its enactment—April 24, 1980. 1980 Minn.Laws, c. 594, § 12.

On or about May 9, 1980, the plaintiffs presented to Liberty Homes documentation of the ambient air levels of formaldehyde in the mobile home and the recommendation of Dr. Duncan that the plaintiffs vacate the home. The plaintiffs requested that Liberty Homes pay their costs of relocation pur-

---

1. Prior to its codification, this statute appeared as Minn.Stat. § 325.991, subd. 4 (1980). *See*

1980 Minn.Laws, c. 594, § 2.

suant to Minn.Stat. § 325F.18, subd. 4. The defendant refused to pay the costs, and the plaintiff filed this lawsuit in Wright County District Court on September 5, 1980. The complaint recites that plaintiffs presented to the defendant the documents required by § 325F.18, subd. 4, and that more than 30 days have elapsed without agreement on a remedy. The relief requested by the plaintiff includes over $32,000 in relocation costs, attorneys' fees, and any further relief that the court may deem just. The defendant removed the case to the federal district court on the basis of diversity of citizenship.

DISCUSSION

The answer filed by the defendant raises several statutory and constitutional challenges to the application of section 325F.18, subd. 4 to this case. The defendant's second defense to the complaint asserts that section 325F.18, subd. 4 does not apply to the instant action because the statute was enacted after the plaintiffs' cause of action accrued and the statute was not expressly made retroactive by the legislature. This Memorandum and Order addresses only the defense of nonretroactivity.

Minn.Stat. § 645.21 provides:

No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature.

This statute draws no distinction between laws affecting procedural and substantive rights, and "[g]enerally, it is immaterial in this state whether a law alters procedural or substantive rights; the legislature still must express its intention to make it retroactive." *Estate of Murphy v. State Department of Public Welfare*, 293 Minn. 298, 198 N.W.2d 570, 576 (1972). *See, Chapman v. Davis*, 233 Minn. 62, 65, 45 N.W.2d 822, 824 (1951). Although the Minnesota Supreme Court has been urged to carve out exceptions to the rule against retroactivity of laws, most of the arguments have been rejected. *See, e. g., Ekstrom v. Harmon*, 256 Minn. 166, 98 N.W.2d 241 (1959).

In only one case has the Minnesota Supreme Court made an exception to section 645.21. In *Hunt v. Nevada State Bank*, 285 Minn. 77, 172 N.W.2d 292 (1969), *cert. de-*

*nied sub nom. Burke v. Hunt*, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970), the Supreme Court ruled that Minnesota's "nonconsensual" long-arm jurisdiction statute, Minn.Stat. § 543.19, should be applied retroactively even though the legislature gave no clear indication that it should be so applied. The Supreme Court distinguished *Chapman v. Davis* and other prior cases denying retroactive application of laws on the basis that the cases "involved either the construction of a 'consensual' long-arm statute or a situation in which the retroactive application of a statute would substantially affect the outcome of the action on the merits." 172 N.W.2d at 302. The exception to the general rule against retroactivity created in *Hunt v. Nevada State Bank* for Minn.Stat. § 543.19 has not been applied to any other statute.

In this case, the legislature gave no clear or manifest indication that section 325F.18, subd. 4 should be applied retroactively. On the contrary, the legislature's indication that the law shall take effect on the day following its enactment could be interpreted as an indication that the legislature intended that the law not be applied retroactively. *Hunt v. Nevada State Bank* is the only authority cited by the plaintiffs in support of their position that section 325F.18, subd. 4 should be applied retroactively. Their reliance is misplaced. *Hunt v. Nevada State Bank* establishes a very narrow exception to the general rule against retroactivity, and section 325F.18, subd. 4 does not fall within the exception. At a minimum, the effect of section 325F.18, subd. 4 is to substantially reduce the burden of proof that a plaintiff must carry in order to recover the costs of relocation. Thus, it will "substantially affect the outcome of the action on the merits," *Hunt*, 172 N.W.2d at 302, and should not be applied retroactively. *Cf. Ekstrom v. Harmon*, 256 Minn. 166, 98 N.W.2d 241 (1959) (ruling of nonretroactivity for law establishing presumption of due care by decedents in wrongful death actions was distinguished in *Hunt* on basis that the presumption would substantially affect outcome on merits).

Accordingly,

IT IS ORDERED that:

1) Plaintiffs' motion for summary judgment be, and hereby is, denied.

2) Defendant's motion for summary judgment on the grounds that Minn.Stat. § 325F.18, subd. 4 does not apply retroactively be, and hereby is, granted.

3) Plaintiffs' complaint be, and hereby is, dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.